## UMPHREY et al. v. BETSCH et al.

(Second Division. Nome. October 20, 1919.)

No. 2723.

**Mines and Minerals** ⊗⟹23(4)—**Statutes—Constitutional Law.**

The Legislature of Alaska provided, in section 7 of chapter 10 of the Session Laws of 1915, that the failure to file for record the proof of assessment work on placer mining claims in Alaska, not later than 90 days after the close of the calendar year in which work was done, shall be deemed an abandonment of the location, and the claim shall thereafter be subject to relocation by any other person. The defendant performed his assessment work for 1916, but did not file his proofs within the time fixed by the territorial act, whereupon plaintiff entered upon and located the claim, and brought suit to quiet title. *Held*, the Legislature of Alaska had power to enact the statute, and it is valid, and, the defendant having failed to comply with it, plaintiff's claim is valid, and his title quieted in accordance therewith.

Reversed (C. C. A.) 270 Fed. 45.

Fred Harrison, of Nome, for plaintiffs.
O. D. Cochran, of Nome, for defendants.

HOLZHEIMER, District Judge. This is an equity case brought by the plaintiffs to quiet title to a mining claim in Wade Hampton precinct, Alaska, known as No. 5 above Discovery on Willow Creek. Being an equity case, I admitted considerable evidence that otherwise might not have been allowed. Had it been a law case, and tried before a jury. the evidence allowed would have been stricken, if certain matters and things had not been proven; the court not being in a position at the outset to know what the proof of the defendants would be—that is to say, whether they would show that the plaintiffs had not made a lawful location, and complied with the laws relative thereto, or that the entry upon said mining claim had not been quiet and peaceable, but had been by force and violence. The evidence wholly failing in this respect, I pass from the evidence of the defendants with reference to the buying of the lay, the possession of tents and equipment, the photographs representing their po-

sition, and such like testimony, with the mere comment that the same was very unsatisfactory and uncertain, to say the least.

This now brings us to the vital point, or controlling issue in this case, and so considered by the defendants' attorney in his brief, the constitutionality and the validity of chapter 10 of the Session Laws passed by the territorial Legislature in 1915, which provides for the location and possession of mining claims in Alaska, and more particularly that portion of said law in section 7, which provides that a failure to file for record proof by affidavit of the owner or some one else in his behalf having knowledge of the facts of the annual assessment work within ninety days after the close of the calendar year, shall be deemed an abandonment by the locator, and the claim shall be subject to relocation by another person, if such location be made after the 90-day period, and before the locator has filed such record proof. Such relocation works a forfeiture of all prior locations.

The locating and holding of mining claims is not a vested right in any sense, but is merely a possessory right or title, depending upon conditions subsequent. So long as the burden placed upon the locator as conditions subsequent by the statute are reasonable, and do not interfere with the primary disposition of the soil, or interfere with any vested rights, we are not in conflict with any federal law. Certain regulations (call them burdens, if you will) governing locations, manner of recording, increased amount of work required to hold possession of mining claims, certain amount of discovery work done within a limited period, and such like regulations, have been held to be reasonable and valid, and not an interference with the federal law. By a parity of reasoning I cannot perceive any difference in principle discernible why the requirements to file an affidavit of annual assessment work is not a just and reasonable regulation. I am of the opinion that such a regulation is a wholesome and salutary law. Had I any doubt whatever in the premises, still I would hesitate to declare this law unconstitutional and invalid. I have searched in vain for words to more aptly express my viewpoint upon this question than those expressed in the opinion of the court in the case of Mares v. Dillon, decided

in 1904, and reported in 30 Mont. 133, 75 Pac. 965, wherein the court uses this language:

"This court should not assume the authority to declare any acts of Congress to be in violation of the provisions of the Constitution of the United States, except in cases entirely clear and free from doubt. Such decision by this court would only be binding within the state, and then only until the question should be finally decided by the Supreme Court of the United States. Again, if this court should hold these statutes void because in conflict with the federal Constitution or acts of Congress, and locations should thereafter be made not complying with their requirements, and the Supreme Court of the United States should afterward decide to the contrary and hold them valid, all locations made in the interim, not complying with their requirements, would be void. This would be a calamity which should be avoided, if possible. On the other hand, if this court holds these statutes valid, all locations must comply with their requirements in order to have any validity, and, if the Supreme Court of the United States should afterward decide that they were void, no one would be injured, because all locations made in conformity with these statutes would surely be valid even if the statutes were void, as all the requirements of the acts of Congress would be fully complied with."

The court has listened attentively to the arguments of counsel, and has very carefully read the briefs of both parties, which show care and thought on the part of respective counsel, and after considering the cases therein cited, I am of the opinion that this act comes within the purview and power of the territorial Legislature, and does not interfere with any congressional or organic act, with reference to the primary disposition of the soil, and is therefore a constitutional and valid act. It being a constitutional and valid act, the question is as to the intent of the statute. The law itself is plain enough, and does not call for any construction. It is not susceptible of any other construction than that which is plain upon its face. It says: On a failure to comply with the provisions of this section (that is, section 7) said claim shall be considered abandoned, and open to location by others, as if no location had been made.

As stated before, I would hesitate to hold any act of the Legislature invalid for any reason, unconstitutional or otherwise, unless it clearly appears beyond the right or power of the Legislature to pass such an act. The legislators are the representatives of the people, and the will of the people is spoken through the acts of the Legislature. I would be

reluctant to thwart the will of the people, except in a very clear case.

After a careful examination and investigation of the authorities I am firmly of the belief that the Alaska Legislature was well within its rights when it passed chapter 10, Laws of 1915, and that the same is a wholesome and salutary law. However, if we had no other authority than section 5050 of the Compiled Statutes of the United States of 1918, passed June 6, 1900, the court would be amply justified in holding that said act was valid and constitutional. Section 5050 of the Compiled Statutes of the United States reads:

"Miners in any organized district may make rules and regulations governing the recording of notices of location of mining claims, water rights, flumes and ditches, mill sites and affidavits of labor, not in conflict with this act, or the general laws of the United States."

If miners can make such rules and regulations, and be upheld by the authorities and the law, certainly the state and territorial legislative acts will apply with equal, if not, greater force.

The law valid, what does the evidence show? The evidence of the defendants (and I believe there is no contradiction in the evidence) is to the effect that they did not file for record an affidavit of annual labor during the year 1916, or within 90 days of the close of the calendar year, as required by section 7, chapter 10, of the Session Laws of 1915, but did make such filing on the 4th day of April, 1917, through their duly authorized agent, William Delbar, which was after plaintiff Umphrey had located and filed his location of said claim. That being the case, such failure to comply with such section worked an abandonment of the claim, and left the same open for relocation by any one else who desired to relocate. If, after the 90-day period, and before said locators had filed their proof of annual assessment work, the same had been relocated by another person, such relocation worked a forfeiture of all prior rights, unless such relocation had not been quiet and peaceable, and had been by force and violence.

The evidence further clearly shows that on the 1st day of April, 1917, and before the defendants had by affidavit filed any proof of the annual assessment work for the year

1916, the plaintiff Umphrey entered upon, peaceably and quietly, and made a valid discovery and relocation of said claim, and complied with all the requirements of the territorial and federal laws then in force; that thereafter, on the 2d day of April, 1917, the plaintiff Umphrey filed for record with the United States commissioner and ex officio recorder of said district a certificate of location of said ground; that thereafter, to wit, on the 2d day of April, 1917, the plaintiff·Umphrey by an instrument in writing, duly executed and acknowledged, transferred an interest in said placer mining claim to the plaintiff Fred Harrison.

In view of all the evidence and the law, and in accordance with the foregoing opinion, the plaintiffs are entitled to relief according to the prayer of their complaint. Findings, conclusions of law, and decree may be prepared accordingly.

☞See same topic.& KEY-NUMBER in all Key-Numbered Digests & Indexes